**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALINE SARMAS, | CASE NO. CV F 09-1333 LJO DLB |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| vs. | (Doc. 6.) |
| COUNTY OF STANISLAUS, et al, | |
| Defendants. / | |

**INTRODUCTION**

Defendants County of Stanislaus ("County"), its sheriff and a sheriff's sergeant[1] seek to dismiss several of plaintiff Valine Sarmas' ("Ms. Sarmas'") employment discrimination and tort claims as barred as a matter of law. Ms. Sarmas concedes that several of her claims are barred but defends others which defendants challenge. This Court considered defendants' F.R.Civ.P. 12(b)(1) and 12(b)(6) motion to dismiss on the record and VACATES the October 29, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS in part and DENIES in part dismissal of Ms. Sarmas' challenged claims.

---

[1] The County Sheriff is Adam Christianson ("Sheriff Christianson") and the sheriff's sergeant is Pedro Beltran ("Sgt. Beltran"). The County, Sheriff Christianson and Sgt. Beltran will be referred to collectively as "defendants."

1

# BACKGROUND[2]

## Ms. Sarmas' Hiring

In September 2008, Ms. Sarmas was hired by the County's Sheriff's Department ("Department"). Sgt. Beltran has served as a Department training supervisor, was in charge of Ms. Sarmas' training, and was a member of the review board, which constituted part of the Department's promotion process. According to the complaint, Sheriff Christianson "has executive and managerial authority" for all Department aspects, including its employment practices and enforcement of County laws, regulations and ordinances.

## Sgt. Beltran's Alleged Harassment

During the evening of September 30, 2009 at a Modesto restaurant, Sgt. Beltran made unwelcome advances on Ms. Sarmas, including placing his arm on the back of her chair and leaning into her in an intimate posture. Ms. Sarmas' coworkers invited Ms. Sarmas to accompany them to Antonio's Bar[3] in Empire, California. Sgt. Beltran insisted that Ms. Sarmas drive him to Antonio's Bar.

Inside Ms. Sarmas' car, Sgt. Beltran kissed Ms. Sarmas until she exited her car to get away from him. Sgt. Beltran said he would "behave" and again entered Ms. Sarmas' car where he kissed, bit and groped Ms. Sarmas.

At Antonio's Bar, Sgt. Beltran sat next to Ms. Sarmas and fondled and groped her. Ms. Sarmas got up and left for her car. Sgt. Beltran followed Ms. Sarmas, who was able to enter and lock her car before Sgt. Beltran could enter the car.

Within the next several days, Ms. Sarmas learned that a Department lieutenant was aware of Sgt. Beltran's conduct and believed that the lieutenant was investigating. Sgt. Beltran telephoned Ms. Sarmas to ask if she knew of the lieutenant's intentions. Sgt. Beltran noted his concern that he would be fired and asked what Ms. Sarmas intended to say in the investigation. Ms. Sarmas responded that she would tell the truth. Sgt. Beltran called several times and stopped when Ms. Sarmas neither answered nor returned his calls.

---

[2] The factual recitation is derived generally from Ms. Sarmas' original complaint, the target of defendants' challenges.

[3] Defendants' papers identify Antonio's Bar as a strip club.

1  Two weeks later when Ms. Sarmas and a coworker frequented a restaurant, Sgt. Beltran
2  approached their table and repeated his objectionable conduct. Sgt. Beltran was told to leave.

3  Within a few minutes, Sgt. Beltran returned, flirted with Ms. Sarmas and showed her cell phone
4  videos of him having sex with one of Ms. Sarmas' coworkers. When Sgt. Beltran left their table to go
5  to the men's room, Ms. Sarmas and her coworker hastened out to Ms. Sarmas' car and drove away.

### Employment Termination

7  On January 20, 2009, Department deputies responded to Ms. Sarmas' 911 call for assistance with
8  a man who had come to her front door, harassed Ms. Sarmas and her friends, and made threats. On
9  February 2, 2009, the Department's Internal Affairs called in Ms. Sarmas and informed her that she was
10 being investigated on rumors that the man whom was arrested at her home on January 20, 2009 was a
11 gang member and her boyfriend.

12 On March 2, 2009, Ms. Sarmas was informed that her probationary employment was terminated
13 although she had received an excellent performance evaluation the prior week. The reason for her
14 termination was "administrative decision."

### Ms. Sarmas' Claims

16 Ms. Sarmas' complaint alleges that her termination was "retaliation for bringing BELTRAN's
17 conduct towards her to the attention of Internal Affairs and Sheriff's Department command staff." The
18 complaint alleges federal statutory discrimination and common law tort claims, seven of which
19 defendants challenge as discussed below. The complaint seeks to recover for Ms. Sarmas' emotional
20 distress, loss of earnings and benefits, and attorney fees. The complaint includes punitive damages
21 allegations.

## DISCUSSION

### F.R.Civ.P. 12(b)(1) Motion Standards

24 Defendants challenge several of Ms. Sarmas' claims as lacking subject matter jurisdiction.
25 F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.
26 Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.
27 375, 377, 114 S.Ct. 341 (1994). "A federal court is presumed to lack jurisdiction in a particular case
28 unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221,

1225 (9th Cir. 1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). A plaintiff bears the burden to establish that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396. "In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise." *Valdez v. U.S.*, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993). "[T]he burden of proof is on the plaintiff to support allegations of jurisdiction with competent proof when the allegations are challenged by the defendant." *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir. 1982).

A defendant may attack the existence of subject matter jurisdiction apart from the pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). In such a case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

### F.R.Civ.P. 12(b)(6) Motion Standards

Defendants further attack several of Ms. Sarmas' claims as barred as a matter of law.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal

conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

With these standards in mind, this Court turns to defendants' challenges to Ms. Sarmas' claims.

### **FEHA Discrimination Claim Against Sheriff Christianson**

The complaint's (sixth) claim for discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq., alleges that "defendants follow a policy and practice of covering up BELTRAN's misconduct and sexual predations which misconduct constitutes disparate treatment in violation of FEHA."

Sheriff Christianson contends that as a supervisor, he is not subject to FEHA discrimination liability. Ms. Sarmas concedes that defendants' argument "has merit" as to Sheriff Christianson and that "for purposes of FEHA, liability for discrimination may . . . only be directed to employer COUNTY."

FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . sex . . ." Cal. Gov. Code, § 12920. California Government Code section 12940(a) deems unlawful: "For an employer, because of . . . sex . . . to refuse to hire or employ the

person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

In *Reno v. Baird*, 18 Cal.4th 640, 663, 76 Cal.Rptr.2d 499 (1998), the California Supreme Court concluded "that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." California Government Code section 12940(a) "indicates that the Legislature did not intend individual supervisory employees to be held liable for employment discrimination. . . . The prohibition regarding discrimination under FEHA applies only to 'an employer.'" *Walrath v. Sprinkel*, 99 Cal.App.4th 1237, 1241, 121 Cal.Rptr.2d 806 (2002), *disapproved on other grounds*, *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624 (2008).

The California Supreme Court has explained the rationale not to hold supervisors subject the FEHA discrimination liability:

> We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals.

*Reno*, 18 Cal.4th at 663, 76 Cal.Rptr.2d 499.

The complaint alleges that Sheriff Christianson is a supervisor, not an employer. Ms. Sarmas is unable to allege facts to qualify Sheriff Christian as an employer. As a matter of law, Sheriff Christianson is not subject to FEHA discrimination liability, and Ms. Sarmas concedes as much to warrant dismissal of the (sixth) FEHA discrimination claim against Sheriff Christianson.

**FEHA Retaliation/Wrongful Termination Against Sheriff Christianson And Sgt. Beltran**

The complaint's (seventh) FEHA retaliation/wrongful termination claim alleges that Ms. Sarmas "opposed unlawful practices by verbally complaining of sexual harassment and discriminatory treatment" and that "Defendant took retaliatory actions against Plaintiff by terminating her employment." The claim further alleges that "Defendants terminated Plaintiff in a way that differed from its ordinary policy and practices." The claim does not identify to whom it is directed or whether it is against the County alone.

1    Defendants contend that as a matter of law, Ms. Sarmas is unable to sue Sheriff Christianson and Sgt. Beltran for FEHA retaliation/wrongful termination. Ms. Sarmas concedes that the "termination decision is the COUNTY's and the COUNTY is the proper defendant."

California Government Code section 12940(h) renders unlawful for an "employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." California Government Code section 12940(h) "incorporates other unlawful employment practices defined in other parts of section 12940, and forbids retaliation against anyone opposing any such unlawful employment practice." *Jones*, 42 Cal.4th at 1164, 177 P.3d 232.

In *Jones*, 42 Cal.4th 1158, 1173, 177 P.3d 232, the California Supreme Court noted that "*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation . . . FEHA does not make individuals personally liable for discrimination." The California Supreme Court concluded "that the employer is liable for retaliation under [California Government Code] section 12940, subdivision (h), but nonemployer individuals are not personally liable for their role in that retaliation." *Jones*, 42 Cal.4th at 1173, 72 Cal.Rptr.3d 624.

Defendants correctly note the absence of individual liability of Sheriff Christianson and Sgt. Beltran for FEHA retaliation/wrongful termination. Ms. Sarmas concedes as much to warrant dismissal of the (seventh) FEHA retaliation/wrongful termination claim against Sheriff Christianson and Sgt. Beltran.

**California Civil Code Section 52.1 Claim Against Sgt. Beltran**

The complaint's (ninth) California Civil Code section 52.1 ("section 52.1") claim alleges that Sgt. Beltran's conduct "amounted to intimidation, coercion and threats by which defendant interferred with plaintiff's enjoyment of her constitutional rights, including her right to be free from violence or threat of violence."

Defendants challenge Ms. Sarmas' standing to pursue a section 52.1 claim on grounds that section 52.1 provides no private right of action and permits only the Attorney General or a district or city attorney to pursue an action. Ms. Sarmas responds the defendants "are simply wrong."

7

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. Section 52.1(a) provides:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, **the Attorney General, or any district attorney or city attorney** may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated. (Bold added.)

Section 52.1(b) permits an individual victim to pursue an action:

> Any **individual** whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured. (Bold added.)

Defendants misplace reliance on section 52.1(a) and ignore section 52.1(b). Section 52.1 in intended to "stem a tide of hate crimes." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 338, 70 Cal.Rptr.2d 844 (1998). "Section 52.1 does not provide any substantive protections; instead, it enables **individuals** to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) (bold added). Ms. Sarmas is correct that her Section 52.1 claim survives defendants' challenge. Defendants' unsubstantiated notion in their reply papers that Ms. Sarmas' section 52.1 claim may be filed only in a California superior court is unavailing.[4]

**Intentional Infliction Of Emotional Distress Against Sgt. Beltran**

Defendants argue that this Court lacks jurisdiction over the complaint's (fifth) intentional infliction of emotional distress claim against Sgt. Beltran because "claims for emotional distress arising

---

[4] Moreover, this Court gives little credence to new arguments or points raised for the first time in reply papers.

8

out of the employer-employee relationship are exclusively governed by workers' compensation." Ms. Sarma responds that the claim alleges fact beyond normal employment to escape the workers' compensation exclusivity. Ms. Sarmas notes that the claim alleges that Sgt. Beltran "committed a criminal act, sexual battery, conduct that is not by definition within the normal risks to be encountered in an employment relationship."

California Labor Code section 3600(a) "provides that, subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.' " *Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 708, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) (footnote omitted.)

"As a general rule, an employee who sustains an industrial injury 'arising out of and in the course of the employment' is limited to recovery under the workers' compensation system." *Torres v. Parkhouse Tire Service, Inc.*, 26 Cal.4th 995, 30 P.3d 57 (2001). "To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise." *Torres*, 26 Cal.4th at 1008, 30 P.3d 57.

California courts have found that emotional distress caused by misconduct in employment relations involving promotions, demotions, criticism of work practices or negotiations as to grievances is a normal part of the employment environment. A cause of action for such a claim is barred by the exclusive remedy provisions under workers' compensation. Cal. Labor Code, § 3601(a); *Shoemaker v. Myers,* 52 Cal.3d 1, 25, 276 Cal.Rptr. 303 (1990) ("The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions."); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160, 233 Cal.Rptr. 308 (1987); *Accardi v. Superior Court*, 17 Cal.App.4th 341, 352, 21 Cal.Rptr.2d 292, 298 (1993).

However, workers' compensation exclusivity does not apply when the "injury is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming within the compensation bargain." *Shoemaker*, 52 Cal.3d at 20, 276 Cal.Rptr. 303. In such cases, "a separate civil

action may lie." *Shoemaker*, 52 Cal.3d at 20, 276 Cal.Rptr. 303.  The Legislature did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices. *Accardi*, 17 Cal.App.4th at 352, 21 Cal.Rptr.2d at 298; *Goldman v. Wilsey Foods, Inc.*, 216 Cal.App.3d 1085, 1095-1096, 265 Cal.Rptr. 294 (1989).

Thus, a claim for emotional distress and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices. *Accardi*, 17 Cal.App.4th at 352, 21 Cal.Rptr.2d at 298; *Watson v. Department of Rehabilitation,* 212 Cal.App.3d 1271, 1290-1291, 261 Cal.Rptr. 204 (1989).  "Although the common law theories do not per se 'relate to discrimination,' they are nonetheless a standard part of a plaintiff's arsenal in a discrimination case." *Rojo v. Kliger*, 52 Cal.3d 65, 74, 276 Cal.Rptr. 130 (1990).

More importantly, "[u]nder an exception to the exclusivity of workers' compensation remedies, an injured employee may bring a civil action against another employee '[w]hen the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee.'" *Torres*, 26 Cal.4th at 1000, 30 P.3d 57 (quoting Cal. Labor Code, § 3601(a)(1)).

Defendants fail to demonstrate that Ms. Sarmas' intentional infliction of emotional distress claim is subject to workers' compensation exclusivity.  The complaint plainly alleges Mr. Beltran's deplorable unprovoked aggression outside the workplace to support a tort claim.  The claim's scope is not limited to work related conduct, the employment relationship or the compensation bargain.  The complaint alleges Sgt. Beltran's unwelcome sexual advances, groping, fondling and sex tape exhibition which are outside the employment arena.  The complaint supports an intentional infliction of emotional distress claim against Sgt. Beltran.

### **Assault And Sexual Battery Against Sgt. Beltran**

The complaint's (eighth) claim alleges that Sgt. Beltran "placed plaintiff in immediate fear of severe bodily harm and committed battery against plaintiff by forcing his way into her car, and on three occasions kissing, biting and groping her, and invading her personal privacy through use of his superior strength and intimidation."

Defendants challenge the claim as subject to workers' compensation exclusivity.  Ms. Sarmas raises her same arguments to defeat defendants' challenge to the intentional infliction of emotional

1  distress claim.

2  Defendants' challenge fails for similar reasons as their challenge to the intentional infliction of
3  emotional distress claim.  The complaint alleges Sgt. Beltran's conduct beyond the outgrowth of
4  employment and inherent or typical of the Department's workplace or enterprise.  Kissing, groping and
5  fondling coworkers and showing sex videos is more than remote from the scope of employment.
6  Moroever, a civil suit beyond workers' compensation exclusivity "is permissible when an employee
7  proximately causes another employee's injury or death by a 'willful and unprovoked physical act of
8  aggression.'" *Torres*, 26 Cal.4th at 1002, 30 P.3d 57.  The complaint sufficiently alleges willful and
9  unprovoked physical aggression to clear without doubt the hurdle of workers' compensation exclusivity.

## The County's Negligence And Respondeat Superior

11  The complaint's (tenth) claim alleges that the County breached its duty of care "to avoid causing
12  unnecessary physical harm and distress to citizens in the exercise of the police function."  The
13  complaint's (eleventh) respondeat superior claim alleges that the County is "liable under all causes of
14  action under California law" in that alleged misconduct was committed within the course and scope of
15  County employment and under Sheriff Christianson's control in his official capacity.

16  Defendants argue that the county is not subject to common law claims under California
17  Government Code section 815.

18  The California Tort Claims Act, Cal. Gov. Code, §§ 810, et. seq., does not provide that a public
19  entity is liable for its own conduct or omission to the same extent as a private person or entity.  *Zelig v.*
20  *County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).  California
21  Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such
22  injury arises out of an act or omission of the public entity or a public employee or any other person,"
23  "[e]xcept as otherwise provided by statute."  Certain statutes provide expressly for public entity liability
24  in circumstances that are somewhat parallel to the potential liability of private individuals and entities,
25  but the Tort Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental
26  entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v.*
27  *Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see  Miklosy v. Regents of*
28  *University of California*, 44 Cal.4th 876, 899, 188 P.3d 629 (2008) ("section 815 abolishes common law

tort liability for public entities"); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

A court first determines whether a statute "imposes direct liability" on a defendant public entity. *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004). "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003). "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985). Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr. 854 (1960).

The negligence and respondeat superior claims appear based on common law tort liability in the absence of reference to statutory basis to impose liability on the County. Such omission is fatal to the claims, and Ms. Sarmas concedes as much to warrant dismissal of the negligence and respondeat superior claims against the County.

### **Sgt. Beltran's Negligence**

Defendants further attack the (tenth) negligence claim as an inadequately pled claim for negligent infliction of emotional distress. Ms. Sarmas concedes that the County is not subject to the common law claim. As to Sgt. Beltran, Ms. Sarmas appears to rely on California Civil Code section 43[5] to create an actionable duty of care.

Negligent infliction of emotional distress is a form of the tort of negligence, to which the

---

[5] California Civil Code section 43 provides: "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and injury to his personal relations."

elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550 (1993); *see Friedman v. Merck & Co., Inc.*, 107 Cal.App.4th 454, 463, 131 Cal.Rptr.2d 885 (2003) ("The existence of a duty is the threshold element of a negligence cause of action."). The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

Defendants correctly note that "[t]here is no duty to avoid negligently causing emotional distress to another." *Potter*, 6 Cal.4th at 984, 25 Cal.Rptr.2d 550. "[D]amages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." *Potter,* 6 Cal.4th at 984, 25 Cal.Rptr.2d 550. The independent duty may be imposed by law, assumed by the defendant, or exist by virtue of a special relationship between the parties. *Potter*, 6 Cal.4th at pp. 984-985, 25 Cal.Rptr.2d 550; *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98.

The negligence claim is conclusory that the County and Sgt. Beltran were subject to a duty to avoid unnecessary harm and distress in the exercise of police function. As noted above, the alleged misconduct falls far outside the "police function" to doom the negligence claim. Ms. Sarmas concedes that the negligence claim fails as to the County and makes no meaningful effort to support it as to Sgt. Beltran. Her apparent reliance on California Civil Code section 43 is unavailing. Ms. Sarmas' claims against Sgt. Beltran sound in intentional tort, not negligence, to warrant dismissal of the negligence claim, especially given Ms. Sarmas' apparent concession of an absence of a cognizable duty for a negligence claim against Sgt. Beltran.

### *Monell* **Liability**

The complaint's (eleventh) respondeat superior claim alleges the County is liable "under all causes of action under California law."

Defendants argue that the (eleventh) respondeat superior claim appears to attempt to cloak the County with respondeat superior liability for the complaint's (first) 42 U.S.C. § 1983 and (third) due process violation claims. Ms. Sarmas does not oppose meaningfully defendants' challenge to *Monell*

1  liability. Ms. Sarmas notes that she "may seek leave to amend the complaint to allege that Sheriff
2  CHRISTIANSON is a 'final decision maker' for purposes of a Monell claim if discovery demonstrates
3  that 'defendants follow a policy and practice of covering up BELTRAN's misconduct and sexual
4  predations,' as alleged in paragraph 45 of the complaint."

5       A local government unit may not be held liable for the acts of its employees under a respondeat
6  superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018
7  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.
8  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law
9  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §
10  1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).
11  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the
12  result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

13       "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S.
14  at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation."
15  *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345
16  (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its
17  employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged
18  constitutional violation was the product of a policy or custom of the local governmental unit. *City of*
19  *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475
20  U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government,
21  a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal
22  policymakers) and the requisite causation (the policy or custom as the "moving force" behind the
23  constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296
24  F.3d 531, 537 (7th Cir. 2002).

25       The complaint lacks adequate allegations of a County policy or custom to impose *Monell*
26  liability on the County and to further warrant dismissal of the (eleventh) respondeat superior claim.
27  Based on her comment noted above, Ms. Sarmas appears to concede the absence of the County's *Monell*
28  liability for the (first) 42 U.S.C. § 1983 and (third) due process violation claims to warrant dismissal of

those claims against the County subject to Ms. Sarmas' timely F.R.Civ.P. 15(a)(2) motion to amend to allege *Monell* claims if discovery supports such claims.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the (sixth) FEHA discrimination claim against Sheriff Christianson;
2. DISMISSES with prejudice the (seventh) FEHA retaliation/wrongful termination claim against Sheriff Christianson and Sgt. Beltran;
3. DENIES dismissal of the (ninth) section 52.1 claim against Sgt. Beltran;
4. DENIES dismissal of the (fifth) intentional infliction of emotional distress claim against Sgt. Beltran;
5. DENIES dismissal of the (eighth) assault and sexual battery claim against Sgt. Beltran;
6. DISMISSES with prejudice the (tenth) negligence against the County and Sgt. Beltran;
7. DISMISSES with prejudice the (eleventh) respondeat superior claim against the County and in turn common law tort claims against the County;
8. DISMISSES the *Monell* liability claims against the County under the (first) 42 U.S.C. § 1983 and (third) due process violation claims but PERMITS Ms. Sarmas to pursue a timely F.R.Civ.P. 15(a)(2) motion to amend to allege *Monell* claims if discovery supports such claims; and
9. ORDERS defendants, no later than November 6, 2009, to file and serve an answer to Ms. Sarmas' remaining claims:
    a. The (first) 42 U.S.C. § 1983 claim against Sheriff Christianson;
    b. The (second) sexual harassment claim against Sgt. Beltran;
    c. The (third) due process violation claim against Sheriff Christianson;
    d. The (fourth) defamation claim against Sgt. Beltran;
    e. The (fifth) intentional infliction of emotional distress cause of action against Sgt. Beltran;
    f. The (sixth) FEHA discrimination claim against the County;

   g.  The (seventh) FEHA retaliation/wrongful termination claim against the County;

   h.  The (eighth) assault and sexual battery claim against Sgt. Beltran; and

   i.  The (ninth) California Civil Code section 52.1 claim against Sgt. Beltran.

IT IS SO ORDERED.

**Dated:   October 26, 2009**      **/s/ Lawrence J. O'Neill**
                 UNITED STATES DISTRICT JUDGE